UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROBERT CASSOTTO                    :
                                   :
                                   :
                                   :
v.                                 :    CIV. NO. 3:09CV1303(HBF)
                                   :
                                   :
JOHN POTTER, POSTMASTER            :
GENERAL OF THE UNITED STATES       :
POSTAL SERVICE                     :


RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. #52]

     Plaintiff Robert Cassotto brings this action against his

former employer, Postmaster General John E. Potter, pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et

seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C.

§§ 621-634 and Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. §§ 794, et seq., alleging that defendant retaliated

against him by terminating his employment because of previous

complaints of discrimination on the basis of age, disability and

religion.  For the reasons that follow, the Postal Service's

motion for summary judgment **[doc. #52]** is **DENIED**.

I. FACTS

     Based on the pleadings, the parties' Local Rule 56(a)

Statements, and the exhibits provided, the Court finds the

following facts which, for purposes of this motion, are construed

in the light most favorable to plaintiff.

     Plaintiff was an employee of the United States Postal

1

Service since June of 1989. Plaintiff was a letter carrier at the Torrington Post Office in Torrington, CT.

On September 4, 2008, plaintiff was issued a notice of removal effective October 4, 2008, following an incident with a co-worker. Plaintiff filed a grievance regarding the imposed discipline of termination. As a result of the grievance, the termination was reduced to a 30-day suspension.

On October, 20, 2008, Fred Dotson, the Postmaster in Torrington, telephoned plaintiff to inform him that the prior termination had been reduced to a 30-day suspension. Upon learning that plaintiff had not received a copy of the written resolution, Dotson offered to fax it to him. Dotson informed plaintiff on the phone that he wanted plaintiff to report for work the next day.  Plaintiff did not receive the resolution via fax from Dotson on October 20. Plaintiff did not report to work on October 21. On October 22, 2008, plaintiff sent Dotson a fax stating in part,

> On October 20, 2008, at 8:42 AM, I received a phone call
> from Postmaster Fred Dotson asking me if I had received the,
> "resolution" yet. I told him I didn't know what he was
> talking about and he said it's on the way. I told him that
> he could fax it to me at my home and he agreed to do so, it
> is now 2:40 PM and I have not received the document from him
> so I can be assured that I may return to work without fear
> of arrest.

[doc. #55-13, at 24].

Plaintiff did not report back to work until November 6, 2008. David Gelzinis, Supervisor of Customer Services, issued

plaintiff a notice of removal on November 26, 2008, effective

December 26, 2008.

The Notice of Removal charged plaintiff with a failure to

follow instructions and being AWOL. [Def. Ex. 4].  It stated

that,

> At approximately 11:00 a.m. on October 20, 2008, Postmaster
> Fred Dotson called you on the telephone and instructed you
> to report for work on October 21, 2008 in light of the
> recent decision of the Dispute Resolution Team, Case # B06N-
> 4B-C-08365873. You replied, "OK, thank you Mr. Dotson." When
> Postmaster Dotson called you the conversation was witnessed
> by myself, Supervisor David Gelzinis, and Tim Thibeault,
> NALC Union Steward.
>
> You did not report to work on October 21, 2008, and you were
> Absent Without Leave, AWOL, for the period of October 21,
> 2008 - October 30, 2008, a total of eight (8) days.[1]

[Def. Ex. 4].

Plaintiff's employment was terminated effective December 26,

2008. Plaintiff grieved the notice of removal. Plaintiff, through

the union, contended that the removal was not for just cause

because he did not receive a written copy of the resolution

regarding the first removal until October 28, 2008 and would not

come onto the Torrington Postal property without written

confirmation of the resolution because he had been told in the

past that he would be arrested if found on the property.  The

Step B Decision determined that management had "proven they had

---

[1] Plaintiff, with a doctor's note, took sick leave from
October 21 through November 5.

just cause when the [sic] issued the Grievant the notice of

removal." [Def. Ex. 10]. Specifically, the Step B Decision found

that,

> It is a fundamental rule of any workplace that employees are
> to obey the proper orders of supervisors, even if they
> disagree, and then have the right to grieve later. The
> Grievant has failed to provide a reasonable explanation for
> his actions.
>
> The Grievant claims that he was afraid to return to work
> because he thought he would be arrested but this makes no
> sense. The PM instructed him to return to work with a
> supervisor and the union steward as witnesses. The Grievant
> failed at the time of the call to express any such fears.
>
> The Grievant also claims that he did not have to return to
> work until he received a copy of the DRT decision. This
> argument also lacks merit. He was required to return to work
> when he received the call. Later that day, the Grievant
> called the PM and asked him to fax him a copy of the
> decision but the fax did not go through. The PM then called
> the Grievant to inform him of this fact, got the Grievant's
> voicemail and left a message that he would provide him a
> copy when he arrived for work the next day. The Grievant
> failed to report as ordered and he has failed to provide a
> reasonable explanation as to why.

[Def. Ex. 10, at 3].

Following his termination, plaintiff filed a formal EEO

Complaint of Discrimination on January 30, 2009 against the

Postal Service. [Def's Ex. 2].  The instant civil lawsuit ensued.

II. <u>LEGAL STANDARD</u>

At the summary judgment stage, the moving party bears the

burden of demonstrating that no genuine issue exists as to any

material fact, <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25

(1986), and the court must resolve all ambiguities and draw all

inferences in favor of the non-movant. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986); Holcomb v. Iona College,
521 F.3d 130, 137 (2d Cir. 2008). If the moving party carries its
burden, the party opposing summary judgment "may not rely merely
on allegations or denials." Fed. R. Civ. P. 56(e)(2). Rather, the
opposing party must "set out specific facts showing a genuine
issue for trial." Id. In short, the nonmovant "must do more than
simply show that there is some metaphysical doubt as to the
material facts." Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 586 (1986). "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted." Anderson, 477 U.S. at 249-50 (citations
omitted).  A party may not create a genuine issue of material
fact simply by presenting contradictory or unsupported
statements. See SEC v. Research Automation Corp., 585 F.2d 31, 33
(2d Cir. 1978). Nor may he rest on "allegations or denials"
contained in his pleadings. Goenaga v. March of Dimes Birth
Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

Courts must be "particularly cautious about granting summary
judgment to an employer in a discrimination case when the
employer's intent is in question. Because direct evidence of an
employer's discriminatory intent will rarely be found,
'affidavits and depositions must be carefully scrutinized for
circumstantial proof which, if believed, would show

discrimination.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d
Cir. 1997) (citations omitted). However, "[s]ummary judgment is
appropriate even in discrimination cases," Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir. 2000), where a plaintiff's
argument is "based on conclusory allegations of discrimination
and the employer provides a legitimate rationale for its conduct,
. . .". Tojzan v. N.Y. Presbyterian Hosp., No. 00 Civ. 6105(WHP),
2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

III. DISCUSSION

     Plaintiff alleges that the Postal Service retaliated against
him in violation of Title VII, the Rehabilitation Act, the Age
Discrimination in Employment Act, on the basis of his religion,
disability and age.[2]     At oral argument and in his papers,
plaintiff concedes that the only claim pursued in this case is
for retaliation in violation of Title VII.

     Title VII prohibits retaliation against employees who
initiate or participate in a proceeding or investigation that
claims their employer violated Title VII. 42 U.S.C. § 2000e-3(a).
Under the McDonnell Douglas burden-shifting framework, plaintiff
must first demonstrate a prima facie case of retaliation. See
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Terry
v. Ashcroft, 336 F.3d 128, 140-41 (2d Cir. 2003). To establish a

---

     [2] Plaintiff has not alleged he was subjected to a hostile
work environment.

prima facie case of retaliation under Title VII, a plaintiff is
required to show by a preponderance of the evidence that: (1) he
participated in a protected activity, (2) the defendant knew of
the protected activity; (3) he experienced an adverse employment
action; and (4) a causal connection exists between the protected
activity and the adverse employment action. <u>Cifra v. Gen. Elec.
Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001).

Once a plaintiff has established a prima facie case of
retaliation, the burden shifts to the employer to articulate some
legitimate, nondiscriminatory reason for the employment action.
<u>McDonnell Douglas</u>, 411 U.S. at 802. "The defendant must clearly
set forth, through the introduction of admissible evidence,
reasons for its actions which, if believed by the trier of fact,
would support a finding that unlawful discrimination was not the
cause of the employment action." <u>St. Mary's Honor Ctr. v. Hicks</u>,
509 U.S. 502, 507 (1993) (citation omitted).

The burden then shifts back to plaintiff to demonstrate that
the defendant's non-discriminatory reason is a mere pretext for
actual discrimination. <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80
F.3d 708, 714 (2d Cir. 1996).  This requires a plaintiff to
produce "sufficient evidence to support a rational finding that
the legitimate, nondiscriminatory reasons proffered by the
employer were false, and that more likely than not discrimination
was the real reason" for the employer's actions. <u>Id.</u> (citations

omitted).

Defendant does not dispute that plaintiff meets his prima facie case. However, defendant argues that summary judgment is warranted because plaintiff cannot prove that the reason for terminating his employment was a pretext for retaliation.

The Postal Service has come forth with evidence that the reason for the termination was plaintiff's failure to report back to work on October 20, 2008 as instructed by Postmaster Dotson.

Plaintiff counters that defendant's stated reason for the termination is false and that he was actually terminated in retaliation for his pending federal lawsuit[3] against the Post Office and other complaints of discrimination. Plaintiff offers two pieces of evidence from which, in plaintiff's view, the jury could conclude that the proffered reason is false. The first, is the existence of temporal proximity between his federal lawsuit, the September 4, 2008 termination that was overturned and the final termination; and, the second, his claim that the legitimate non-discriminatory reason for the discharge was bogus, because plaintiff was to receive the resolution in writing before reporting to work.

With regard to the temporal proximity, it is well settled in

---

[3] Per plaintiff's request, the court takes judicial notice of <u>Cassotto v. Potter</u>, Docket Number 3:07cv266 (JCH)(HBF) ("Cassotto I"). The undersigned is quite familiar with Cassotto I, which was tried before her and resulted in a defendant's jury verdict on July 24, 2009.

our circuit that while the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, without more, such temporal proximity is insufficient to satisfy plaintiff's burden to bring forward some evidence of pretext. El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010) (affirming defendant's grant of summary judgment where plaintiff produced no evidence other than temporal proximity in support of his proffered reason that his discharge was pretext) (citing Cf. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770 (2d Cir. 1998); accord Simpson v. N.Y. State Dep't of Civil Servs., 166 Fed. Appx. 499, 502 (2d Cir.2006) (summary order)). Here, plaintiff does not rely on temporal proximity alone; he argues, rather, that the temporal proximity coupled with evidence that the defendant's reason for termination was bogus raises a triable issue of fact.

Plaintiff argues that Dotson's instruction to report back to work the next day was contingent on plaintiff receiving the resolution in writing. Plaintiff at his deposition testified that on October 20, 2008, he spoke on the telephone to Dotson who told him to return to work and that he would fax the resolution to return to work that same day. Plaintiff further testified that he never got the fax, granting him access to work, which is why he did not report to work the next day. Plaintiff explains that  his

reluctance to report to work without the written resolution stems from his experience in previous disputes with postal employees and the recommendation of the union that he not step onto the Torrington postal office property without written authorization.

At this stage, the Court must resolve all ambiguities and credit all factual inferences that could rationally be drawn in favor of the party opposing summary judgment. <u>See</u>, <u>e.g.</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Although this is a close question, aided by the evidence of temporal proximity, the Court must credit plaintiff's evidence that (1) he was told by Dotson that he would receive the resolution to return to work in writing and (2) that based on past practices it was plaintiff's belief that he should not return to work until he received this resolution in writing. Plaintiff does not admit that the Postmaster left him a voicemail, telling him to report to work the following day at which time he would receive his copy of the grievance resolution.  Plaintiff has raised a genuine issue of material fact that the jury must resolve. Accordingly, summary judgment is **DENIED** to defendant on plaintiff's retaliation claim.

IV. <u>CONCLUSION</u>

For the foregoing reasons, defendant's Motion for Summary Judgment **[doc. #52]** is **DENIED**. This is not a recommended ruling.

10

The parties consented to proceed before a United States

Magistrate Judge **[doc. #25]** on December 9, 2009, with appeal to

the Court of Appeals.


         SO ORDERED at Bridgeport this 23rd day of February 2012.

                                        _____/s/_____
                                        HOLLY B. FITZSIMMONS
                                        UNITED STATES MAGISTRATE JUDGE